UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEXTER WILLIAMS<br><br>        Petitioner,<br><br>  v.<br><br>KEVIN CHAPPELL, Warden San Quentin California State Prison,<br><br>        Respondent. | Case No.: 1:12-cv-01344 LJO<br><br>ORDER GRANTING PETITIONER'S MOTION FOR EQUITABLE TOLLING<br><br>HEARING FOR JULY 31, 2013 VACATED |

    Petitioner Dexter Williams ("Williams") requests 150 days of equitable tolling, extending the limitations period from August 8, 2013 to January 6, 2014. The motion is opposed by Respondent Kevin Chappell, Warden of California State Prison at San Quentin (the "Warden").

**I.    STATE CASE BACKGROUND**

    Williams was convicted of and sentenced to death for the murder, robbery, and kidnap of Miguel Gonzalez. The victim was lured to an alley with the promise of a sexual encounter. The victim was assaulted and robbed by Williams and accomplices just before the encounter was to begin. After a futile escape attempt, the victim was confined in the trunk of his own car, taken to a walnut orchard where he was beaten further and succumbed to his injuries.

    Williams' death sentence was entered by the Fresno County Superior Court on February 28, 1996. The California Supreme Court affirmed the conviction, the special circumstance findings, and

1

the sentence on May 5, 2008, with rehearing denied on June 11, 2008. Through post-conviction counsel, Williams filed two state habeas petitions, one on September 4, 2004, and one on May 30, 2008. Both were denied on August 8, 2012.

## II.  FEDERAL CASE PROCEEDINGS

Williams commenced this federal action on August 17, 2012 with an application for appointment of counsel, stay of execution of his sentence, and leave to proceed *in forma pauperis*. Based on the recommendation of the Eastern District of California Selection Board, CJA attorneys Saor Stetler and Richard Novak were appointed to represent Williams on September 12, 2012. Although Phase I of the case commenced upon appointment of counsel, the case management plan and budget were not approved on October 26, 2012, since Messrs. Stetler and Novak were completely new to the case and needed time to review a sufficient number of records to formulate a Phase I budget.

Phase II commenced on December 1, 2012, but due scheduling issues, Williams' attorney could not file the proposed Phase II budget until December 10, 2012, and the hearing on the case management plan and budget was not conducted until December 14, 2012. The Court issued a preliminary Phase II budget order on December 18, 2013, covering most of the budget requests presented by Williams' attorneys.[1] As stated in Williams' moving papers, the Court did not authorize funding for the requested mitigation specialist, because Williams had not explained whether claims he was attempting to develop in federal court were exhausted, unexhausted, or partially exhausted.[2] He was directed to request an amendment to the budget no later than the last week in December 2012 with additional explanation.

Williams' attorneys were not able to comply with that time-frame, but did present an amendment request on February 25, 2013. A major focus of the requested amendment was funding

---

[1] Ordinarily the Court would not reveal information about budgeting matters in a publicly filed document. The Court departs from this practice in the present case because Williams, himself, has initiated discussion of budget matters in his moving papers.

[2] The Fresno Attorney Guide clarifies that pre-petition investigation related to exhausted claims is not funded. On the other hand, pre-petition investigation of unexhausted claims may be funded, depending upon the object and scope of the proposed investigation. Similarly, pre-petition investigation of partially exhausted claims may be funded, subject to the same limitations, where additional factual development would render the previously exhausted claim unexhausted.

2

OGrantMo4EquitTolling-DWil

for the mitigation specialist. On March 15, 2013, the amendment was denied because the Court could not discern whether interviews to be conducted were duplicative of prior interviews by previously retained social historians in state court. The Court invited further clarification from Williams.

Partial satisfaction of the Court's concerns was presented on April 1, 2013, and the Court authorized a limited number of hours for the mitigation specialist to interview Williams, review records, and report back to counsel. The request to interview family members and friends was denied without prejudice to further witness identification.

A subsequent budget amendment request, prepared concurrently with the within motion, was filed on July 11, 2013. As explained in the moving papers, after conducting a two-day interview with Williams and reviewing available records, the mitigation specialist prepared a mitigation investigation plan identifying family members and close associates who were not interviewed previously at all, or not interviewed adequately to permit the identification of mitigating facts. On July 12, 2013, the Court granted the amendment, but greatly reduced the number of hours requested, advising Williams that pre-petition investigation is limited to fact development and is not authorized for evidence gathering.

### III. WILLIAMS' ARGUMENT IN FAVOR OF TOLLING

Williams claims three factors inform the justification necessary for equitable tolling. First, he claims there was approximately a one-month gap between the filing of Williams' request for appointment of counsel and the order appointing counsel. Second, he argues pre-petition investigation has been delayed by the Court's management of Phase II budgeting issues, in particular, for the designated mitigation specialist to conduct the interviews necessary for the preparation of comprehensive social history. Finally, he explains that both CJA appointed attorneys in this matter have been heavily absorbed in their work on other death penalty cases.

#### A.  The Delay Between the Request and Appointment of Counsel

Williams requests the Court to take into consideration that he was without counsel for nearly a month from the time his filed his request for appointment of counsel and the date counsel were appointed, August 17, 2012 to September 12, 2012. He points out that standard capital habeas practice is for an attorney to assist the petitioner in preparation of his or her petition. Thus, once a capital

petitioner files a motion for appointment of counsel he or she is granted "a mandatory right to qualified legal counsel." *McFarland v. Scott*, 512 U.S. 849, 856 (1994); *see also* 18 U.S.C. § 3599(a)(2) (providing for the appointment of counsel in post-conviction proceedings in 28 U.S.C. § 2254 cases for petitioners subject to the death penalty).

Williams argues he was diligent in his pursuing appointed counsel, as demonstrated by his signing the request papers on August 12, 2012, just four days after the California Supreme Court denied his state habeas petition. Moreover, his request was filed soon thereafter, on August 17, 2012.

He claims the extraordinary circumstances follow from the fact that this is a capital case, which like all capital cases, is considered complex. This case in particular, is argued to be extraordinarily complex due the 17,000 page record, including 52 volumes of reporter's transcripts, and counsel files comprising 24 boxes.

**B. The Delay in Authorization of Mitigation Specialist Funding**

Williams' first point in this category is that he presented his application for the assistance of a mitigation specialist on December 10, 2012, seven months before the limitations period was to expire. He argues that after repeated attempts to secure the necessary funding, the Court rejected his requests until April 2, 2013, when it authorized only limited funding for the mitigation specialist to interview Williams, himself. The mitigation was not authorized to interview any family members or close associates at that time.

As authorized, from April through July 2013, the mitigation specialist interviewed Williams, reviewed available social history materials, prepared a memorandum to counsel summarizing his interview with Williams, and drafted a proposed mitigation investigation plan. This process culminated in the follow up request for additional funding filed on July 11, 2013. As noted above, limited funding for the mitigation specialist to interview select witnesses was authorized on July 12, 2013. Once these interviews are concluded and the appropriate documentation is completed, Williams proposes that additional assessments by other mental health experts will follow. For his litigation team to complete all of his pre-petition investigation and petition preparation, Williams estimates he will require 150 days.

Williams claims the forgoing demonstrates that he has been diligent in his efforts to develop the mitigation facts necessary to state his federal claims. In this regard, he notes that other federal courts in other districts of California have equitably tolled the statute of limitations to accommodate budgeting delays.

In addition, Williams argues the Equal Protection Clause of the Fourteenth Amendment should be considered. He claims there is disparate treatment between capital habeas petitioners represented by CJA-funded counsel and those represented by the Federal Public Defender. Petitioners in latter category experience no funding-related delays in the appointment of appropriate ancillary service providers. Williams argues that his representation by CJA counsel rather than the Federal Public Defender is a factor beyond his control.

**C.  Obligations in other Death Penalty Cases**

Williams characterizes the responsibilities his attorneys have had in other death penalty cases over the last five months as extraordinary. Beginning in August 2013, however, both attorneys aver they will have the time necessary to devote to Williams' case.

Mr. Novak represents James Ninete Leon Guerrero in a 2008 capital prosecution pending in this Court.[3] When Mr. Novak accepted the appointment in Williams' case, there was no trial date in Mr. Guerrero's case. On March 4, 2013, the Court set trial for July 14, 2014 and a comprehensive pre-trial motions schedule which commenced immediately. In his supporting declaration, Mr. Novak avers that in the past four months he has devoted at least 100 hours per month for various substantive and procedural motions. To substantiate some of these motions, Mr. Novak has had to travel to Guam (Mr. Guerrero's birth place). Finally he notes that three motions in the case, including a motion regarding Mr. Guerrero's mental functioning (*Atkins v. Virginia*, 536 U.S. 304 (2002)), are due on July 29, 2013.

Mr. Stetler represents condemned inmate Angelo Michael Melendez on direct appeal before the California Supreme Court. From October 2011 through February 2013, Mr. Stetler reviewed the 9,200 page record, and from March through June 2013, he prepared Mr. Melendez's opening brief. The

---

[3] The district judge presiding is the Honorable Philip Pro.

5

OGrantMo4EquitTolling-DWil

pleading was filed with the California Supreme Court on July 1, 2013. In the meantime, Mr. Stetler also represents Rodney Berryman, Sr. before the Ninth Circuit from an adverse capital habeas ruling in this Court.[4] From April 10, 2012, five months before Mr. Stetler's appointment to represent Williams, until February 4, 2013, Mr. Berryman's case remained stayed in the Ninth Circuit, pending resolution of the *certiorari* petition in *Ryan v. Gonzales*. With the stay lifted, Mr. Stetler is working on Mr. Berryman's opening brief, which, after two extensions, is due July 30, 2013. The Court's review of the Ninth Circuit docket for Mr. Berryman's case shows that on July 22, 2013, Mr. Stetler was granted another extension to file the opening brief, up to and including September 30, 2013. To date, Mr. Stetler has expended 150 hours preparing Mr. Berryman's opening brief.

## IV. THE WARDEN'S OPPOSITION

The Warden argues simply that Williams has filed to demonstrate the requisite extraordinary circumstances to justify equitable tolling. He claims the delay in appointment of counsel is extraordinary only in that it was brief. As for the delay in authorizing funds for the mitigation investigation, the Warden could only speculate that Williams did not satisfy the Court he was entitled to funding. While he posits that the delay may have been due to lack of clarity in the Court's orders requesting further information, he argues that Williams' failure to articulate the necessary justification does not warrant a finding of extraordinary circumstances. He suggests that a finding of extraordinary circumstances in these circumstances would render the term meaningless and could set an easily exploitable precedent for CJA attorneys deliberately to present incomplete funding applications. Describing Williams' final offered justification as nothing more than Williams' attorneys are busy, the Warden maintains that busy attorneys are the norm.

## V. STANDARD FOR EQUITABLE TOLLING

In *Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549 (2010) the Supreme stated unequivocally that AEDPA statute of limitations, 28 U.S.C. § 2244(d) "is subject to equitable tolling in appropriate cases." Two factors inform whether a case is appropriate for equitable tolling: 1) diligence of the petitioner in pursuing his or her rights; and 2) extraordinary circumstances preventing the timely filing

---

[4] The district judge who presided over Mr. Berryman's case was the Honorable Anthony W. Ishii.

6

OGrantMo4EquitTolling-DWil

of the petition. *Id*. ___ U.S. at ____, 130 S. Ct. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). *Holland* notes that a decision to grant equitable tolling must be made on a "case-by-case" basis and that courts entertaining such motions should exercise "flexibility" to avoid "mechanical rules." *Id*., ___ U.S. at ___, 130 S.Ct at 2563. The Court further noted that the diligence required is "reasonable" not "maximum feasible" diligence. *Id*. at ___, 130 S.Ct. at 2565.[5]

While the high Court has not passed on whether equitable tolling may be granted prior to the filing of the petition, Williams cites to numerous California cases pending in federal court in which prospective equitable tolling has been granted, including *San Nicolas v. Ayers*, 1:06-cv-0942 LJO and *Dickey v. Ayers*, 1: 06-cv-0357 AWI. Not mentioned are the even more recent cases of *Doolin v. Wong*, 1:09-cv-1068 AWI and *Perry v. Martel*, 1:11-cv-1367 AWI.

Prospective equitable tolling has been practiced in California federal cases since *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283 (9th Cir. 1997). The Court concludes that establishing a schedule for the filing of court documents, that is, authorizing prospective tolling, is good case management. Moreover, the Warden offers no opposition to prospective tolling.

## VI. JUSTIFICATION FOR TOLLING.

With respect to the delay in appointing counsel, the Court agrees that Williams was diligent in his pursuit of appointed counsel. It's difficult, however, to characterize the 26-day delay as creating extraordinary circumstances preventing Williams from filing his petition within the limitations period. While the Court does not disagree that Williams' case involves many issues, and as a death penalty case necessarily will involve the development of mitigation evidence, it is not more complex than many capital habeas actions pending in this Court. Nonetheless, the Court is well aware that granting equitable tolling during the time capital petitioners await appointment of counsel is widely practiced and sanctioned by the appellate courts. The Warden's position that the brevity of the delay somehow minimizes any impact of the delay is not well taken. Accordingly, the Court takes the 26 day delay in appointment of counsel into consideration when determining the amount of equitable tolling.

---

[5] The Court did not comment on "extraordinary circumstances" because that issue was not before it.

7

1    The justification Williams offers for equitable tolling due to the Court's delay in authorizing the assistance of a mitigation specialist is not overly convincing. From the Court's perspective, some of the delay has been triggered by Williams' own litigation team. On this matter, the Court is in agreement with the Warden's educated guess.

The first delay occurred between the Court's initial Phase II budget order on December 18, 2012 and the amendment request filed February 25, 2013. As noted above, the Court had requested that Williams file his amendment application by the last week in December. The second delay occurred between April 2, 2013 and July 11, 2013 while the mitigation specialist reviewed records, conducted a two-day interview with Williams and prepared reports. Having reviewed the billing statements of the mitigation specialist during this three-month period, it is clear the mitigation specialist did not devote more than a part-time effort to becoming familiar with the materials and initiating a visit with Williams at San Quentin State Prison.[6]

Separately, Williams' diligence argument overlooks the fact that while the Court repeatedly asked him to address the exhaustion status of the claims and provide detail about the specific individuals to be interviewed, satisfaction of the former request did not come until April 1, 2013, and of the latter until July 11, 2013. In light of these observations, Williams' Equal Protection argument is not compelling.

The third justification for tolling, that is, the obligations of counsel in their other capital cases, puts the delays attributable to Williams' litigation team into perspective. Notwithstanding the Warden's trivialization of the attorneys' respective obligations, the Court does not discount the argument. Counsel apparently prioritized their obligations to their respective clients as they deemed appropriate. Some accommodation for the attorneys' hard work in these difficult cases will be made.

While none of the reasons given for Williams' inability to file his petition within the limitations period is convincing independently, taken together, the Court is persuaded to grant some tolling. This

---

[6] From the application for the order shortening time, the Court is aware that and has taken into consideration that the mitigation specialist originally scheduled the interview of Williams to take place May 1, 2013. Due the cancellation of the flight, the interview had to be rescheduled for May 14 and 15. The Court also is aware that the mitigation specialist is involved in providing assistance in other significant cases.

8

decision is informed further by the July 12, 2013 limited funding authorization for Williams' mitigation. This authorization, however, will not fund a boundless effort to uncover every conceivable fact. The Court has circumscribed the scope of pre-petition investigation to fact development of *new* information rather than the development of evidentiary support for existing claims. Accordingly, the five months Williams requests to complete his investigation and draft the petition is too generous.

While Messrs. Stetler and Novak are completing their legal writing in their other cases, the mitigation specialist in the present case should have begun to conduct the authorized interviews. While the interviews are being completed and documentation of those interviews is being prepared, the contemplated additional assessments of Williams by other authorized experts should be undertaken. During all this activity, the Court anticipates that counsel will be working on those parts of the petition and accompanying points and authorities which do not involve mitigation issues. Preparing a federal habeas petition is not a simple task; fitting all the pieces together into a comprehensive but cogent document is a formidable undertaking.

## VII.   ORDER

In light of the foregoing, the justifications for tolling advanced by Williams, the July 12, 2013 authorization of mitigation specialist assistance, and the complexity of presenting a federal habeas petition, the Court grants 120 days of equitable tolling. The limitations period for the petition shall be extended from August 8, 2013 to December 6, 2013. On that date, Williams shall file his petition and accompanying memorandum of points and authorities.

IT IS SO ORDERED.

Dated: <u>July 24, 2013</u>

<u>/s/ Lawrence J. O'Neill</u>
Lawrence J. O'Neill
United States District Judge
